THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:21-CR-66 |
| | : | (JUDGE MARIANI) |
| RASHAWN HAWARI-RASULULLAH, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction

Defendant's Motion to Dismiss Indictment with Prejudice in Violation of the Sixth

Amendment Speedy Trial Right, and the Speedy Trial Act (Doc. 123) is pending before the

Court.  With the Motion, Defendant argues that more than seventy non-excludable days

have elapsed since his Indictment in violation of the Speedy Trial Act, 18 U.S.C. § 3161,

and the period of delay runs afoul of his right to a speedy trial afforded by the Sixth

Amendment of the United States Constitution. (*Id*.)  For the reasons discussed below, the

Court concludes that the Speedy Trial Act has not been violated because seventy non-

excludable days have not elapsed and the Sixth Amendment right to a speedy trial has not

been violated because the required balancing test does not weigh in his favor.

### II. Background

The Government provides an extensive procedural background.  (Doc. 126 at 1-12.)

Defendant does not dispute the accuracy of the events set out in the Procedural

Background section of the Government's opposition brief.  (*See* Doc. 128.)  Therefore, with

modifications, the Court sets out the Government's background information below.

On March 16, 2021, a federal grand jury sitting in Scranton, Pennsylvania, returned a three-count indictment charging the Defendant with (1) Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Section 841(a)(1); (2) Possessing a Firearm, namely a .380 Cobra FS380, S/N FS112393, in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and (3) Felon in Possession of a Firearm, in violation of Title 18, Section 922(g)(1).

The charges arise from an incident occurring on November 22, 2020, in which the Defendant was the driver and sole occupant of a rental vehicle which was stopped by the Pennsylvania State Police. The Defendant tried to flee approximately 9 minutes into the traffic stop by placing his vehicle in drive and accelerated away from the stop.  Trooper Kody Nowicki was partially inside of the driver's side door of the defendant's rental vehicle when he took off. Trooper Nowicki tried to steer the vehicle away from traffic on Interstate 80 West resulting in the vehicle crashing into a wooded embankment on the side of the highway. . . . [Eventually] Trooper Nowicki, with the assistance of a responding Trooper were [sic] able to pull the defendant from his vehicle. . . .

On April 1, 2021, the Defendant was arrested in Ohio on the present Indictment and had an initial appearance before Magistrate Judge Thomas M. Parker in the Northern District of Ohio.

On April 29, 2021, the Defendant was transferred to the Middle District of Pennsylvania where an initial appearance and arraignment were held before the Magistrate Judge Joseph F. Saporito, Jr. . . .   The Defendant pled not guilty and Attorney Thomas B. Helbig was appointed as counsel. The next day the Court issued a Scheduling Order setting a trial date of June 14, 2021, along with several other deadlines, including that all pretrial motions were due no later than May 13, 2021. (Doc. 16). On May 13, 2021, Attorney Helbig filed an unopposed motion for an extension to file pretrial motions and for a trial continuance. (Doc. 18). The Court issued an Order on May 14, 2021, granting the extension and finding that, "the ends of justice will be served by affording such an extension. The Court further finds that an extension outweighs the best interests of the pubic and the Defendant in a speedy trial, and that any delay occasioned by this continuance shall be

excluded from speedy trial calculations pursuant to 18 U.S.C. § 3161(h)(7)." (Doc 19.) The Order set a new deadline for all pretrial motions no later than June 14, 2021 and noted that the trial date would be scheduled after the expiration of the motions deadline.

On June 3, 2021, the Defendant filed a sealed Letter to the Court. (Doc. 20). Per the Defendant's Brief, this letter was a motion from the Defendant requesting the removal of Attorney Helbig. (Def. Br. at 2).

On June 14, 2021, Attorney Helbig filed a second unopposed motion for extension of time. (Doc. 22).

On June 15, 2021, the Court issued a second Order granting the extension and again excluded any delay under 18 U.S.C. 3161(h)(7). A new pretrial motions deadline was set for July 14, 2021. (Doc. 23).

On July 14, 2021, the pretrial motions deadline set by the Court expired. At some point between June 15, 2021, and July 27, 2021, the Defendant wrote a letter to the Court (Doc. 24), filed under seal, requesting removal of Attorney Helbig.

On July 27, 2021, the Court issued an Order scheduling a hearing on the above-referenced letter/motion for August 12, 2021. (Doc. 25). The Court further found that the time between the date of the Order (July 27, 2021) and the date of the hearing on "the Defendant's motion to remove counsel" shall be excluded pursuant to both 18 U.S.C. 3161(h)(1)(D) as well as 18 U.S.C. 3161(h)(7)(B)(iv).

On August 5, 2021, Attorney Helbig filed a motion to withdrawal [sic] as well as an unopposed Motion for an extension of time to file pretrial motions. (Docs. 27, 28).

On August 12, 2021, the Court held a hearing and granted the withdrawal of Attorney Helbig and the Defendant's request to proceed pro se. (Docs. 30, 31). The Court also appointed Elliot Smith, Esq., from the Office of the Federal Public Defender, to serve as standby counsel to the Defendant. (Doc. 31).

On August 13, 2021, the Court issued a Scheduling Order setting a trial date for September 13, 2021, and a final pre-trial conference for September 8,

2021. (Doc. 33). The Scheduling Order also issued deadlines for any motions in limine and related briefs. (Doc. 33). The Court further excluded the delay until trial from speedy trial calculation. (Doc. 33). In a separate Order, the Court also denied Attorney Helbig's final motion for extension of time. (Doc. 32).

On August 19, 2021, the Defendant filed an unopposed pro se Motion for Extension of Time to File Pretrial Motions. (Doc. 35). The next day, August 20, 2021, the Court granted the Defendant's motion and ordered that all pretrial motions were due no later than September 20, 2021. (Doc. 36). The Court again excluded the intervening time from speedy trial calculations under 18 U.S.C. 3161(h)(7).

On September 20, 2021, the Defendant filed a Motion to Suppress with a Brief in Support. (Docs. 40, 41). The Government replied with a timely Brief in Opposition on October 4, 2021. (Doc. 43).

On October 8, 2021, the Defendant filed an unopposed motion for an extension of time to file a reply brief. (Doc. 45). On the same day, the Court issued an Order granting the Defendant until November 12, 2021, to file a reply and excluded the resulting delay from speedy trial calculations. (Doc. 46).

On November 12, 2021, the Defendant filed a reply brief to the Government's Brief in Opposition. (Doc. 49)

On November 17, 2021, the Court issued a Scheduling Order, setting the date of a suppression hearing for February 17, 2022. (Doc. 50).

On February 17, 2022, the suppression hearing began with one Government witness, Trooper NOWICKI. At the end of the day, the Defendant was still in the middle of cross-examination of Trooper NOWICKI. On the next day, February 18, 2022, the Court issued a Scheduling Order setting the hearing to resume on March 7, 2022. (Doc. 60). In the Order, the Court held that from the date of the Order until the conclusion of the evidentiary hearing and the disposition of the Defendant's motion be excluded pursuant to 18 U.S.C. §3161(h)(1)(D).

On February 23, 2022, the Government filed a motion to continue the evidentiary hearing for four days due to the unavailability of the second Government witness, Trooper Jonathan Lazarchick. (Doc. 62). The

Government was unable to seek concurrence from the pro se Defendant, and assumed that he did not concur in the motion.

On February 25, 2022, the Court issued an Order re-scheduling the second day of the hearing for March 14, 2022, and further found that the delay would be excludable from the speedy trial calculation. (Doc. 63).

On March 14, 2022, the second day of the hearing continued, with the Defendant continuing his cross examination of Trooper NOWICKI.

On March 15, 2022, the Court issued a further Scheduling Order setting the third day of the evidentiary hearing for March 28, 2022. (Doc. 68). The Court, again, found that time to the conclusion of the hearing and the disposition of the Defendant's motion to suppress would be excluded from the speedy trial calculation.

On March 28, 2022, the evidentiary hearing concluded and the Court granted the Defendant two weeks from his receipt of the hearing transcript to file further motions regarding suppression. On April 8, 2022, the transcript was made available to both parties via ECF. (Doc. 72).

On April 22, 2022, the Defendant filed an unopposed motion for an extension of time to file a post-hearing brief. (Doc. 73).

On April 25, 2022, the Court issued an Order granting the Defendant [sic] motion for an extension of time, and further ordering that the Defendant's standby counsel provide the Defendant a hardcopy of the hearing transcripts. The Order also gave the Defendant a further 18 days to file a post-hearing brief. (Doc. 74).

On May 12, 2022, the Defendant filed an unopposed motion for an extension of time to file a post-hearing brief. (Doc. 77).

On May 13, 2022, the Court granted the Defendant's motion and set a due date of May 27, 2022. The Court also found that the intervening time be excluded from the Speedy Trial Act. (Doc. 78).

On May 26, 2022, the Defendant filed two motions. The first motion was an unopposed motion for an extension of time to file a post- hearing brief. (Doc.

79). The second motion was a motion for production of Grand Jury transcripts and certain other materials believed to be Jencks Act material. (Doc. 80).

On May 27, 2022, the Government responded to the Motion for Disclosure with a Brief in Opposition. (Doc. 81). On the same day, the Court issued an order granting the Defendant until June 27, 2022, to file a post-hearing brief. (Doc. 82). The Court found in the same order that the resulting delay would be excluded from the speedy trial calculation. (Doc. 82).

On June 13, 2022, the Court issued an Order finding the Defendant's Motion to Produce Witness's Statements to be moot. (Doc. 83).

On June 27, 2022, the Defendant file [sic] a post-hearing brief to his motion to suppress. (Doc. 84).

On July 8, 2022, the Government filed a motion for an extension of time to file a response, requesting . . . an additional 30 days to respond. (Doc. 85). The Government's reasons for requesting the extension were multiple, including: the numerous grounds of suppression listed in the Defendant's 17-page long supplemental brief, the length of the hearing transcript which needed to be reviewed (575 pages), as well as the Government Counsel's trial Schedule. (Doc. 85).

On July 13, 2022, the Court granted the Government's motion and set a response deadline of August 8, 2022. The Court also excluded the extension of time from the speedy trial calculation under 18 U.S.C. 3161(h)(7), finding that the extension outweighs the best interests of the public and the Defendant. (Doc. 86).

On August 8, 2022, the Government filed a Supplemental Brief in Opposition. (Doc. 87).

On August 15, 2022, the Court denied the Defendant's motion to suppress. (Docs. 88-89). On the same day, the Court issued a Scheduling Order setting a new trial date of November 7, 2022, as well as deadlines for motions in limine and other trial documents. (Doc. 90). In that Order, the Court further found that "the ends of justice will be served by delaying trial in order to ensure Defendant Hawari-Rasulullah, his stand-by counsel, and counsel or [sic] the Government, the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and that such a delay

outweighs the best interests of the public and the Defendant in a speedy trial, any delay occasioned by the scheduling of this trial shall be excluded from the speedy trial calculation pursuant to 18 U.S.C. 3161(h)(7)." (Doc. 90).

After various motions in limine and other documents were filed, on November 4, 2022, the Friday immediately prior to the commencement of trial on Monday, November 7, 2022, the Defendant filed the instant motion to dismiss. (Doc. 123.)

(Doc. 126 at 1-12.)

### III. ANALYSIS

## A. Speedy Trial Act Violation

In his supporting brief, Defendant states that seventy nonexcludable days had passed on July 8, 2021.  (Doc. 123 at 8.)  As of that date, the Government calculates that thirteen nonexcludable days had passed.  (Doc. 126 at 13-14.)  The Government further concludes that, at most, a total of twenty-six days had passed on July 27, 2021, and there are no additional nonexcludable days to date.  (*Id.* at 14-16.)  Defendant calculates that, as of July 27, 2021, eighty-nine nonexcludable days had passed.  (Doc. 123 at 8.)  The Court concludes that Defendant's assessment of nonexcludable time is inaccurate.

The Speedy Trial Act provides as follows:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, which ever date last occurs.

7

18 U.S.C. § 3161(c)(1).  Section 3161(h) addresses what periods of time are excludable in

calculating the time within which a trial must commence.  It specifically provides the

following in pertinent part:

> **(h)** The following periods of delay shall be excluded in computing the time
> within which an information or an indictment must be filed, or in computing the
> time within which the trial of any such offense must commence:
>
> > **(1)** Any period of delay resulting from other proceedings concerning the
> > defendant, including but not limited to—
> >
> > . . . .
> >
> > **(D)** delay resulting from any pretrial motion, from the filing of the motion
> > through the conclusion of the hearing on, or other prompt disposition of,
> > such motion.
> >
> > . . . .
> >
> > **(H)** delay reasonably attributable to any period, not to exceed thirty
> > days, during which any proceeding concerning the defendant is actually
> > under advisement by the court.
> >
> > . . . .
> >
> > **(7)(A)** Any period of delay resulting from a continuance granted by any
> > judge on his own motion or at the request of the defendant or his counsel
> > or at the request of the attorney for the Government, if the judge granted
> > such continuance on the basis of his findings that the ends of justice served
> > by taking such action outweigh the best interest of the public and the
> > defendant in a speedy trial.  No such period of delay resulting from a
> > continuance granted by the court in accordance with his paragraph unless
> > the court sets forth, in the record of the case, either orally or in writing, its
> > reasons for finding that the ends of justice served by the granting of such
> > continuance outweigh the best interests of the public and the defendant in
> > a speedy trial.

18 U.S.C. § 3161(h)(1)(D), (H), (7)(A).  Section 3162 provides that the defendant has the burden of proof supporting a motion claiming a Speedy Trial Act violation.  18 U.S.C. § 3162(a)(2).

Defendant's assessment of nonexcludable days is inaccurate because his calculation in inconsistent with the excludable periods of delay set out in 18 U.S.C. § 3161(h).  In his supporting brief, Defendant acknowledges that, pursuant to 18 U.S.C. § 3161(c)(1), the clock began to run on April 29, 2021, when he appeared for his arraignment in the Middle District of Pennsylvania.[1]  (Doc. 123 at 7.)  His conclusion that seventy nonexcludable days had passed as of July 8, 2021, is based on his assessment that no nonexcludable days occurred after his April 29, 2021, arraignment because his attorney's motions for extensions of time filed on May 13, 2021, and June 14, 2021, were not excludable.  (See Doc. 123 at 7-8.)  Delays resulting from the filing of these motions (Docs. 18, 22) and the Court granting of same (Docs. 19, 23) are clearly excludable pursuant to 18 U.S.C. § 3161(h)(7)(A) as the motions for extensions of time were made by Defendant's counsel and granted by the Court with the reasons for the continuance set forth in the Court's Orders (see Docs. 18, 19, 22, 23).  Several circuits have confirmed that the defendant's counsel may seek continuances without the defendant's consent and that this time is properly excluded for Speedy Trial Act purposes.  United States v. Lynch, 726 F.3d

---

[1] Defendant presents a different calculation in his reply brief (see Doc. 129 at 2) which the Court will address infra.

346, 356 (2d Cir. 2013); *United States v. Gates*, 709 F.3d 58, 65 (1st Cir. 2013); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012).  Therefore, as properly calculated by the Government, thirteen excludable days occurred before Defendant's counsel filed the June 13, 2021, Motion for Extension of Pretrial Motion Deadline and for Trial Continuance (Doc. 18).  (*See* Doc. 126 at 15 (citing *Bloate v. United States*, 559 U.S. 196, 214 (2010)).)

The speedy trial clock did not begin to run again until the July 14, 2021, deadline for filing pretrial motions set out in the Court's June 15, 2021, Order (Doc. 23) elapsed without the filing of pretrial motions or a motion for a further extension of time within which to do so.  An additional thirteen days elapsed from July 14, 2021, to July 27, 2021, the date on which the Court set a hearing for consideration of Defendant's request to remove appointed counsel (Doc. 24) wherein the Court excluded the time between the date of the Order and the date of the hearing pursuant to 18 U.S.C. § 3161(h)(1)(D) and 18 U.S.C. § 3161(h)(7)(B)(iv) (Doc. 25).

A thorough review of the docket reveals that, contrary to Defendant's assertions, all time has been excludable since July 27, 2021.  Defendant asserts that sixty days of nonexcludable time elapsed between the Court's November 17, 2021, Order (Doc. 50) scheduling a hearing on Defendant's "Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment to the United States Constitution (Motion for Hearing)" (Doc. 40) for February 17, 2022, and the date of the suppression hearing because only one month is an acceptable period of delay regarding the scheduling of the hearing.  (Doc. 123 at 9.)

Defendant's assessment is incorrect: any period of "delay resulting from any pretrial motion,
from the filing of the motion through the conclusion of the hearing on, or other prompt
disposition of, such motion" is excludable.  18 U.S.C. § 3161(h)(1)(D); *Henderson v. United
States*, 476 U.S. 321, 326-30 (1986) (all time between the filing of and the hearing on a
motion, whether or not the hearing was prompt, is excludable).  Here, the suppression
hearing did not conclude until March 28, 2022, when the Court held the third and final day of
the suppression hearing.[2] (*See* Doc. 70.)  (Doc. 63 ¶ 3.)

At the close of the hearing on March 28, 2022, the Court asked Defendant if he
wanted the opportunity to file a post-hearing brief, and Defendant responded that he wanted
to do so.  (Hr'g Tr. Day 3 106:18-107:7, Doc. 72 at 106-07.)  Thereafter, a briefing schedule
was established and the proceedings were adjourned.  (*Id.* at 107-08.)  All delays in the
post-hearing briefing schedule were excludable because the speedy trial clock was tolled
until the prompt disposition of Defendant's pretrial suppression motion pursuant to 18
U.S.C. § 3161(h)(1)(D) and (H) and the Court could not dispose of the motion until all post-

_____

[2] To the extent Defendant contends that the delay caused by the Court's granting the
Government's request for continuance of the scheduled second day of the hearing (Doc. 123 at 9) is not
excludable, his argument is without merit because the hearing had not yet concluded.  Further, the
Government sought the continuance because the Government's second witness, Trooper Jonathan
Lazarchik, was going to be away for a four-day police training seminar which was pre-planned and funded
(Doc. 62, ¶ 5) and the Court granted the Motion, concluding that any delay caused by the continuance was
excludable pursuant to 18 U.S.C. § 3161(h)(7).  Trooper Lazarchik was the second officer at the scene of
the traffic stop and the only officer who witnessed Defendant's attempt to flee.  (*See* Doc. 88 at 13.)
Therefore, the delay caused by his unavailability was also excludable pursuant to 18 U.S.C. §
3161(h)(3)(A) which provides that excludable time includes "[a]ny period of delay resulting from the
absence or unavailability of the defendant or an essential witness."

hearing briefs had been filed.  Consistent with section 3161(h)(1)(H), the Court issued its

Memorandum Opinion and Order disposing of the suppression motion within thirty days of

the receipt of the Government's post-hearing brief.  (*See* Docs. 87-89.)  Thereafter, all time

has been excludable based on the Court's scheduling of the trial (Doc. 90), the filing of

Defendant's pending motion (Doc. 123), and the Court's order rescheduling the trial for

December 7, 2022 (Doc. 125).

The foregoing timeline shows that no violation of the Speedy Trial Act has occurred

in that only twenty-six nonexcludable days have elapsed since Defendant's April 29, 2021,

arraignment in the Middle District of Pennsylvania.

In his reply brief, Defendant presents a different timeline, asserting that the delay in

transferring him to the Middle District of Pennsylvania was not fully excludable because it

exceeded the ten days allowed in 18 U.S.C. § 3161(h)(1)(H).  (Doc. 129 at 2.)  The cited

subsection does not address transfer of a defendant from one district to another.  Rather, 18

U.S.C. § 3161(h)(1)(F) provides that excludable delay includes "delay resulting from

transportation of any defendant from another district . . . except that any time consumed in

excess of ten days from the date an order of removal or an order directing such

transportation, and the defendant's arrival at the destination shall be presumed to be

unreasonable."  Defendant maintains that only ten of the thirty-three days which elapsed

from March 27, 2021, the date he was taken into custody in Ohio, to his April 29, 2021,

transfer to the Middle District of Pennsylvania, are excludable and the remaining twenty-three days are added to the speedy trial clock. (Doc. 129 at 2.)

Assuming *arguendo* that § 3161(h)(1)(F) applies to the situation at issue and further assuming that Defendant is correct that only ten days of the pre-arraignment period should be excluded, the conclusion that the Speedy Trial Act has not been violated would not change. The suggested twenty-three days added to the previously calculated twenty-six days means that only forty-nine days of the seventy-day period could have elapsed pursuant to § 3161(h)(1)(F) and no Speedy Trial Act violation could be based on the inclusion of this time.

## B. Sixth Amendment Violation

Defendant also contends that the Court should dismiss his case because his right to a speedy trial under the Sixth Amendment of the United States Constitution has been violated.[3] (Doc. 123 at 11.) The Government responds that Defendant's Sixth Amendment rights have not been violated. (Doc. 126 at 21.)

_____

[3] The second section of Defendant's reply brief is titled "Ineffective Counsel" and identifies therein the Sixth Amendment right to the assistance of counsel. (*See* Doc. 129 at 3.) Defendant's Sixth Amendment right to counsel is not implicated in the pending motion because the standard does not apply to pretrial complaints about counsel. Ineffective assistance of counsel claims are properly raised on collateral review rather than on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (*citing Strickland*, 466 U.S. at 689-92). The Petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). Further, Defendant's complaints about his former appointed counsel are of no moment to the outcome of his case as Defendant now proceeds pro se.

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy and public trial."  U.S. CONST. amend. VI. "Congress enacted the Speedy Trial Act to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced."  *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988) (citing H.R. Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402). Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time."  *United States v. Lattany,* 982 F.2d 866, 870 n.5 (3d Cir. 1992).  However, because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982)).

As explained by the Supreme Court:

> Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court

should employ a four-part balancing test set forth by the Supreme Court in *Barker v. Wingo,*

407 U.S. 514 (1972), to assess the merits of the claim. *See United States v. Dent,* 149 F.3d

180, 184 (3d Cir. 1998). An analysis of these factors avoids an "inflexible approach[]" which

would result from applying a fixed-time period in determining whether there has been a

constitutional violation and, rather, applies a balancing test "in which the conduct of both the

prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529-530. In *Barker*, the

Supreme Court identified four factors in determining whether a defendant has been

deprived of his right to a speedy trial: "[l]ength of delay, the reasons for the delay, the

defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "None of

these factors is 'either a necessary or sufficient condition,' and the factors 'must be

considered together with such other circumstances as may be relevant.'" *United States v.*

*Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533); *see also*,

*Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) ("All factors must be considered and

weighed as no one factor is dispositive nor 'talismanic.'") (citing *Barker*, 407 U.S. at 533).

### 1. Length of Delay

As an initial matter, the length of delay "is measured from the date of formal

accusation, *i.e.,* from the earliest date of arrest or indictment until the commencement of

trial." *Hakeem*, 990 F.2d at 760 (citing *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982)).

Importantly, "[t]he length of the delay is to some extent a triggering mechanism. Until there

is some delay which is presumptively prejudicial, there is no necessity for inquiry into the

other factors that go into the balance." *Barker*, 407 U.S. at 530.  Otherwise stated,

> [t]he first of these [factors] is actually a double enquiry. Simply to trigger a
> speedy trial analysis, an accused must allege that the interval between
> accusation and trial has crossed the threshold dividing ordinary from
> "presumptively prejudicial" delay, since, by definition, he cannot complain that
> the government has denied him a "speedy" trial if it has, in fact, prosecuted his
> case with customary promptness. If the accused makes this showing, the court
> must then consider, as one factor among several, the extent to which the delay
> stretches beyond the bare minimum needed to trigger judicial examination of
> the claim.

*Doggett,* 505 U.S. at 651-52 (internal citation omitted).  In determining whether a defendant

has met this threshold burden of demonstrating delay which is "presumptively prejudicial",

the Supreme Court has noted that "[d]epending on the nature of the charges, the lower

courts have generally found postaccusation delay 'presumptively prejudicial' at least as it

approaches one year" but has emphasized that "as the term is used in this threshold

context, 'presumptive prejudice' does not necessarily indicate a statistical probability of

prejudice; it simply marks the point at which courts deem the delay unreasonable enough to

trigger the *Barker* enquiry."  *Id*. at 652 n.1.  Further, "because of the imprecision of the right

to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent

upon the peculiar circumstances of the case.  To take but one example, the delay that can

be tolerated for an ordinary street crime is considerably less than for a serious, complex

conspiracy charge."  *Barker*, 407 U.S. at 530-531.  *See also*, *Battis*, 589 F.3d at 678 ("We

have previously held that a delay of even fourteen months is sufficient to trigger review of

the remaining *Barker* factors.  However, we have also noted that longer delays can be

tolerated, for example, when the crime is very serious or complex.") (internal citations and

quotation marks omitted).

Here, Defendant was first arrested and detained on the Indictment on April 1, 2021,

in the Northern District of Ohio and was arraigned on April 29, 2021, after being transferred

to the Middle District of Pennsylvania.  *See supra* p. 2.  From the date of his arrest to the

date he filed the pending Motion to Dismiss on November 4, 2022, 582 days elapsed or

approximately nineteen months elapsed.  This period of time is sufficient to trigger the

*Barker* enquiry.  *See e.g., Hakeem*, 990 F.2d at 760 (over fourteen-month delay warranted

full inquiry into *Barker* factors); *United States v. Mensah-Yawson*, 489 F. App'x 606, 611 (3d

Cir. 2012) (fifteen-month delay sufficient to warrant inquiry into other *Barker* factors).

Although this length of delay is initially "presumptively prejudicial" and warrants an

analysis of the *Barker* factors, this factor only slightly weighs in favor of Defendant because

it is closely entwined with the reason for the delay.  Defendant asserts only that the delay is

sufficient to trigger review of the remaining *Barker* factors.  (Doc. 123 at 11.)

## 2.  *Reason for the Delay*

With respect to the second *Barker* factor, reason for the delay, the Government

"bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate
> effort by the Government to delay the trial "in order to hamper the defense"
> weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct.
> 2182. A "more neutral reason such as negligence or overcrowded courts" also

weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.

In turn, "delays attributable to the dilatory actions of the defendant cut against a finding of a Sixth Amendment violation." *Hakeem*, 990 F.2d at 766. *See also*, *Battis,* 589 F.3d at 680 ("By contrast, 'delay caused by the defense weighs against the defendant' . . .") (quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)). This "rule accords with the reality that defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to the accused's advantage' because 'witnesses may become unavailable or their memories may fade" over time.'" *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521); *see also*, *United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986) ("Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon." (internal quotation omitted)).

The Government asserts that, with the exception of two motions, every delay was occasioned by Defendant. (Doc. 128 at 22.) The first Government motion sought a brief delay in the second day of the suppression hearing because of the unavailability of its second witness. *See supra* pp. 4-5, 11 & n.2. As set out above, this is not to count against the Government. *Battis*, 589 F.3d at 680. The second Government motion sought an

extension of time to file a responsive brief to Defendant's post-hearing motion.  *See supra* p.

6.  The total delay for the second motion was 30 days.  This period of time, though

excludable for Speedy Trial Act purposes, weighs against the Government here.  The Court

also finds that the delay in transfer to the Middle District of Pennsylvania also weighs

against the Government.  *Battis*, 589 F.3d at 679-680.  This is a period of approximately 27

days.  Thus, not more than two months of the period of approximately nineteen months is

attributable to the Government.

Having filed eight motions for continuances (Docs. 18, 22, 28, 35, 45, 73, 77, 79),

Defendant is largely responsible for the delays in this case.  As set out above, Defendant

cannot now criticize delays caused by him.  *See Loud Hawk*, 474 U.S. at 316-317.

Therefore, this factor weighs against Defendant.

### 3.  Assertion of Speedy Trial Rights

The Court now turns to the third *Barker* factor – the defendant's assertion of his right

to a speedy trial.  "Whether and how a defendant asserts his right [to a speedy trial] is

closely related" to the other *Barker* factors.  *Barker*, 407 U.S. at 531.  Thus, the strength of a

defendant's efforts to assert his right "will be affected by the length of the delay, to some

extent by the reason for the delay, and most particularly by the personal prejudice, which is

not always readily identifiable, that he experiences."  *Barker*, 407 U.S. at 531.  "[T]he point

at which the defendant asserts his right is important because it may reflect the seriousness

of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) (citing *Barker*, 407 U.S. at 531).

Here, Defendant asserted his right to a speedy trial for the first time in the pending Motion filed on November 4, 2022 – the Friday before trial was set to commence on Monday, November 7, 2022.  In his supporting brief, he cites his not guilty plea and a letter to the Court regarding his Court appointed attorney (Doc. 123 at 12), but he does not point to any specific instance in which he asserted a right to a speedy trial although he now calculates for Speedy Trial Act purposes that seventy days elapsed on either June 14, 2021, or July 8, 2021 (see Doc. 129 at 2).

Given Defendant's asserted timeline, the Court concludes that Defendant delayed in asserting his alleged speedy trial rights.  As stated in *Palmer*, "[t]o the extent that promptness in asserting the right is important, then [a defendant's] silence . . . works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."  537 F.2d at 1288; *see also United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance).  Relying on *Palmer*, the District Court in *United States v. McNeil*, No. 3:08-CR-161-1, 2009 WL 3103782 (M.D. Pa. Sept. 24, 2009), noted that the defendant did not assert his speedy trial rights when they first began to expire and determined that "[t]he speedy trial issue was first raised over a year after the trial was originally scheduled to be

held[.] . . . This failure to promptly assert his speedy trial rights indicates that 'any hardships he suffered were either minimal or caused by other factors.'" *Id.* at * 3 (quoting *Palmer*, 537 F.2d at 1288).

Because Defendant did not promptly assert his right to a speedy trial at or near the time he contends that the right was violated, this factor weighs against him.

### 4. Prejudice to Defendant

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant. With respect to this factor, "the burden of showing prejudice lies with the individual claiming the violation." *Hakeem*, 990 F.2d at 760.

As directed in *Barker*, the prejudice factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532. *Barker* identified and explained the three interests which the Supreme Court has identified:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
>
> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no

recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker*, 407 U.S. at 532-33.

In *Doggett*, in response to the Government's claim regarding the prejudice factor that

the defendant had "failed to make any affirmative showing that the delay weakened his

ability to raise specific defenses, elicit specific testimony, or produce specific items of

evidence," *Doggett*, 505 U.S. at 655, the Supreme Court emphasized that its precedent

indicates that

affirmative proof of particularized prejudice is not essential to every speedy trial claim. See *Moore* [*v. Arizona,* 414 U.S. 25, 26 (1973)]; *Barker, supra,* 407 U.S., at 533, 92 S. Ct., at 2193. *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S., at 532, 92 S. Ct., at 2193. And though time can tilt the case against either side, see *id.,* at 521, 92 S. Ct., at 2187; *Loud Hawk, supra,* 474 U.S., at 315, 106 S. Ct., at 656, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, see *Loud Hawk, supra,* at 315, 106 S. Ct., at 656, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett*, 505 U.S. at 655-56.

In *Battis*, the Third Circuit drew from *Barker* and *Doggett* that a defendant can establish prejudice in two ways.  589 F.3d at 682.  First, he can make a specific showing that he was subject to "'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay."  *Id.* (quoting *Barker*, 407 U.S. at 532).  Second, a defendant can claim prejudice without providing "'affirmative proof of particularized prejudice'" based on "'excessive delay [which] presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'"  *Id.* (quoting *Doggett* , 505 U.S. at 655-56).  In *United States v. Villalobos*, 560 F. App'x 122 (3d Cir. 2014) (not precedential), a panel of the Third Circuit identified the three types of prejudice recognized by the Supreme Court (as stated in *Hakeem*, 990 F.2d at 760), noting that the third type, impairment of a defense, "can either be shown in a particularized fashion, or presumed due to an extreme pre-trial delay." 560 F. App'x at 127 (citing *Doggett,* 505 U.S. at 655 (finding presumptive prejudice in pre-trial delay of more than eight years)).

Regarding prejudice resulting from oppressive pretrial incarceration, *Hakeem* found that pretrial incarceration of fourteen and one-half months was not *per se* oppressive, explaining that the determination of whether incarceration was "oppressive" takes into account the "conditions of confinement."  990 F.2d at 761 (citing *Barker*, 407 U.S. at 532; *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991)).  *Villalobos* noted that the Circuit Court has "held that where a defendant is detained for fourteen and a half months pre-trial, 'proof

of sub-standard conditions or other oppressive factors beyond those that necessarily attend

imprisonment' is necessary in order to establish prejudice due to oppressive pre-trial

incarceration." 560 F. App'x at 127 (quoting *Hakeem,* 990 F.2d at 761).

Prejudice resulting from anxiety and concern cannot be based solely on a general

claim of anxiety. *Hakeem*, 990 F.2d at 762. As stated by the Third Circuit,

> [v]ague allegations of anxiety are insufficient to state a cognizable claim. In
> *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), we held that a defendant
> must show that his anxiety extended beyond that which "is inevitable in a
> criminal case." *Id.* at 116. In order to reach that level, the petitioner must
> produce evidence of psychic injury. *See id.* at 115-16.

*Id.*

To establish that his defense was specifically prejudiced by the delay, a defendant

cannot rely on general allegations. *Hakeem*, 990 F.3d at 763. Speculative and conclusory

assertions cannot satisfy a defendant's burden of showing specific prejudice due to

impairment of his defense: where there has been the recognition of "the possibility of

impairment of a fair trial that may well result from the absence or loss of memory of

witnesses in this case[,] . . . [t]hat possibility of prejudice is not sufficient to support [the

defendants'] position that their speedy trial rights were violated." *Loud Hawk*, 474 U.S. at

315 (internal citation and quotation omitted).

Alternatively, a defendant can rely on the presumption of prejudice discussed at

length in *Doggett*. 505 U.S. at 655-66. Notably, the presumption of prejudice as to the

fourth *Barker* factor differs from the initial presumption necessary to trigger consideration of

24

the *Barker* factors.  For example, in *Hakeem*, fourteen and a half months was sufficient to

trigger initial inquiry into the other *Barker* factors. 990 F.2d at 760, but *not long enough* to

establish a presumption of prejudice under the prejudice factor, *id.*at 764.  For a defendant

to establish a presumption of prejudice, he must show that the pretrial delay in his case was

of sufficient duration to be considered presumptively prejudicial.  *See*, *e.g.*, *Battis*, 589 F.3d

at 682-83.  *Battis* explained that "[i]n evaluating whether the period of delay was long

enough to trigger this 'presumption of prejudice,' the *Doggett* Court considered both the total

length of delay (over eight years) and the portion of that delay attributable to the

Government (six years)."  589 F.3d at 682-82 (quoting *Doggett*, 505 U.S. at 657-58).

*Doggett* held that the delay was long enough to presume that the defendant's trial would be

compromised and he would be prejudiced by the delay.  *Id.*  After stating that the Circuit

Court had had few occasions to consider what period of time was sufficient to find

presumptive prejudice, *Battis* noted that it had previously found a fourteen-month period

between arrest and trial was insufficient to find presumptive prejudice.  *Id.* at 683 (citing

*Hakeem*, 990 F.2d at 764).  The Circuit Court then held that "prejudice will be presumed

when there is a forty-five-month delay in bringing a defendant to trial, even when it could be

argued that only thirty-five months of that delay is attributable to the Government."  *Battis*,

589 F.3d at 683.  In *Villalobos*, the Third Circuit panel concluded that a delay of sixteen and

a half months was insufficient to presume prejudice.  560 F. App'x at 127.  In *United States*

*v. Shaw*, 891 F.3d 441, 455 (3d Cir. 2018), the Third Circuit assumed *arguendo* that twenty-seven months could be sufficient to find presumptive prejudice.

Where a defendant relies on a presumption of prejudice to establish the fourth *Barker* factor and identifies a delay of sufficient duration to be considered presumptively prejudicial, "the presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired.'"  *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. 658 & n.1).

Turning now to Defendant Hawari-Rasulullah's arguments regarding the prejudice factor, Defendant recites the protected interests identified in *Barker*.  (Doc. 123 at 12-13.) As to oppressive pretrial incarceration, Defendant cites the length of the incarceration, the fact that he was the only one charged in the Indictment and was out on bail on state charges when he was arrested on federal charges, and the medical, dental and nutrition issues he has raised during his pretrial incarceration.  (Doc. 123 at 12 (citing Docs. 48, 100).)

In *Battis*, the length of delay was forty-five months.  Here, the delay is not even half of that and is just slightly longer than the delay of fourteen and a half months that was considered insufficient to allow an inference of prejudice in *Hakeem* and the delay of sixteen and a half months found insufficient to presume prejudice in *Villalobos*, 560 F. App'x at 127. Because the delay in this case is closer to the duration of those delays found not to give rise

to a presumption of prejudice, the Court concludes that a presumption of prejudice is not appropriate in this case.

Defendant being the only person charged in the Indictment is of no significance in that he was alone in the vehicle when he was stopped on Interstate 80 in Pennsylvania and subsequently arrested after he attempted to flee.

Regarding medical, dental and nutritional issues, the Court has received and investigated Defendant's claims on these issues and has not found that further Court action was required. (*See, e.g.*, Docs. 100, 101, 104, 105.) Thus, the Court has no basis to conclude that the medical, dental and nutritional issues identified by Defendant allege sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment as generally required to establish prejudice due to oppressive pretrial incarceration. *Hakeem,* 990 F.2d at 761; *Villalobos*, 560 F. App'x at 127.

Regarding prejudice due to anxiety and concern, Defendant first states that he owns and operates a tow truck business and has not been able to provide for his family. (Doc. 123 at 12.) He adds that he was not incarcerated on the state charges and would have been able to provide for his family if not for the federal charges. (*Id*.) Finally, Defendant states that the Government has illegally wiretapped family members' phones. (*Id.* at 13.)

Defendant provides no verification of his business and/or the support it provided his family nor does he provide any details about the alleged wiretapping. As to the latter, the Government notes that it provided a copy of Defendant's recorded jail calls during his

pretrial incarceration and believes the recorded calls are what Defendant is referring to

when he says that family phones were wiretapped.  (Doc. 126 at 26 n.6.)  With these vague

allegations, Defendant has not pointed to anxiety which extended beyond that which "is

inevitable in a criminal case" or any evidence of psychic injury as required to show prejudice

under this prong.  *Dreyer,* 533 F.2d at 115-16.  Thus, the Court concludes that Defendant's

assertions regarding the sources of his anxiety and concern are insufficient to state a

cognizable claim.  *Hakeem*, 990 F.2d at 762.

Regarding specific prejudice to his defense, the "most serious" interest, *Barker*, 407

U.S. at 532, Defendant first states that the Government was asked for full discovery but it

has "piecemealed the information out as to hinder the defense."  (Doc. 123 at 13.)  The

Government responds that, to the extent the publication of discovery can be considered

"piecemeal," it is because of the continued investigation by the Government into

Defendant's case.  (Doc. 126 at 27.)  The Court concludes that the manner in which

Defendant has received information does not show that his defense has been prejudiced by

his incarceration because the Court has no reason to find that the information would have

been disclosed any differently if he had not been incarcerated.  The same is true of

Defendant's allegations related to other documents about which Defendant complains.

(*See* Doc. 123 at 13.)

Finally, Defendant states that his defense has been impaired by Lackawanna County

Prison "denying legal, and not allowing Defendant to use law library."  (*Id*.)  The Court has

investigated Defendant's claims regarding legal mail and prison officials have verified his refusal of legal mail. (*See* Docs. 100, 101, 104.)  Defendant was offered the opportunity to file a response to matters raised after the Court received correspondence from Lackawanna County Prison (*see* Doc. 105), but he did not do so.  Therefore, the Court finds that Defendant provides nothing but conclusory assertions on the issue and he cannot satisfy his burden of showing that he was specifically prejudiced by the delay with this the type of conclusory argument.  *Hakeem*, 990 F.3d at 763; *Loud Hawk*, 474 U.S. at 315.

With this finding, Defendant has not established "specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay," *Battis,* 589 F.3d at 682 (quoting *Barker,* 407 U.S. at 532).  Therefore, this factor weighs against Defendant.

### 5. Balancing of Factors

As the foregoing analysis establishes, on balance, only the first *Barker* factor (length of delay) weighs slightly in Defendant's favor.  Defendant's role in creating the delay, the fact that he did not promptly assert his speedy trial rights, and his failure to establish specific or presumptive prejudice foreclose a determination that he has demonstrated that his Sixth Amendment speedy trial rights were violated.  Thus, Defendant's pending motion will also be denied as to the Sixth Amendment speedy trial claim.

## IV. Conclusion

For the reasons set out above, the Court will deny Defendant's Motion to Dismiss Indictment with Prejudice in Violation of the Sixth Amendment Speedy Trial Right, and the Speedy Trial Act (Doc. 123).  A separate Order will be filed with this Memorandum Opinion.

Robert D. Mariani
United States District Judge